## Webber v. Vogel, Appellant.

[Marked to be reported.]

*Deeds—Grant of coal—Right of way—Mines and mining.*

Where a deed conveys " all the merchantable coal lying and being " within certain boundaries, with " the free and uninterrupted right of way for the purpose of digging, mining and carrying away the said coal," the grantee in the deed, or his successor in title, has no right to take through the pit, or over the surface of the tract, coal from an adjoining tract owned by him.

In such a case where the mining privileges are expressly restricted to the coal conveyed, the fact, that both tracts were formerly owned by one person, who used a visible road or way over the surface of the coal conveyed to transport coal from the other tract, does not entitle the grantee in the deed to such right of way.

Such a case is not governed by the rule that, where an easement or servitude is imposed by the owner on one portion of his real estate for the benefit of another, a purchaser of it at a private or judicial sale, without an express reservation, takes the property subject to the easement or servitude.

Argued Nov. 3, 1893. Appeal, No. 270, Oct. T., 1893, by defendant, Gottlieb Vogel, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1892, No. 242, on verdict for plaintiff, William Webber. Before Sterrett, C. J., Green, Williams, Mitchell, Dean and Thompson, JJ.

Trespass for wrongful use of mining privileges.

At the trial, before McClung, J., it appeared that, prior to 1879, James Kelley owned two adjoining tracts of land in Wilkins township. In that year Mrs. Eliza Lewis and Miss Eliza H. Lewis purchased at sheriff's sale one of the tracts, consisting of about forty-three acres, being part of the land on which the alleged trespass was committed. In the same year James Weinmann purchased at sheriff's sale the adjoining tract. During Kelley's ownership of the two tracts, coal had been mined on the adjoining tract and had been carried over the tract in controversy to the turnpike road. The road over which it was carried was open and visible.

On Oct. 12, 1882, Mrs. Lewis and Miss Lewis conveyed to A. N. Sutton all the merchantable coal under their land, together with the free and uninterrupted right of way into, upon and under said land at such points and in such manner as may be proper and necessary for the purpose of digging, mining and carrying away said coal; and "also the tracks or tramways now in the pit or pits at present opened into said seam or stratum of coal, and the platform connected therewith, and four pit wagons, one dump cart, one mule and harness, and the blacksmith shop heretofore used in operating said seam or stratum of coal, and all other fixtures and appurtenances now in and used in operating the pits opened in said seam or stratum of coal." Sutton's rights became vested in Weinmann, Vogel's lessor.

On Jan. 9, 1885, Mrs. Lewis and Miss Lewis conveyed about fourteen acres of their land to Webber, subject to the grant of the coal to Sutton. Weinmann leased the coal on both tracts

to defendant.  Defendant claimed that he had a right to haul and carry through the entries and passages in the coal under plaintiff's land the coal which he mined and dug under Weinmann's land, and to use the right of way over the surface of plaintiff's land to the turnpike.

The court charged in part as follows :

" [In the first place, as to the right of way.  The defendant undoubtedly has the right to use this road for the purpose of transporting any necessary materials to this mine, for the purpose of transporting the coal away from the mine, and for the purpose of transporting from the mine any material or any débris that was produced in the process of mining.  He had the right to use it for all purposes incident to the mining of this coal.  The only improper purpose for which it is alleged that he has used it is that of transporting coal that was not included within the conveyance by Mrs. Lewis to Sutton, and I instruct you that he would have no right to use it for any such purpose.

" There is evidence here of the existence of a road probably wholly for coal purposes, and under the law of Pennsylvania when a man buys a property with a road that is opened across it, and continuous in its nature, which gives notice by its very appearance there that somebody else has a right to its use, he takes with notice of that road, and subject to that road, but under the facts of this case that principle has no application.

" The defendant here, or the defendant's grantor, Sutton, accepted from the grantor of the plaintiff a deed which defined the privileges which he was to have with respect to the coal that he purchased, and the fact being conceded, or being plain, that he took under that grant, the evidence here would not be sufficient to establish the existence of any road which would subject the surface to any larger privileges with reference to that mine ; so that you can confine your attention wholly to the privileges granted in that deed, and exclude the consideration of this road alleged to exist there, because it was apparent upon the face of the grant.

" The defendant here has only the privileges contained in that grant, the first one being the right of way and the right to transport ; and under a proper construction of that grant the law confines him to its use for the purposes of the coal

under this forty-three acres of land, or under the Lewis tract, and if he has mined and taken out any coal beyond this, which was not necessary for the purposes of working this mine, then to that extent he would be a trespasser, and he would be liable for at least nominal damages.] [6]

" The evidence here is that he did mine some coal in an entry that ran through the Weinmann land, but the answer of the defendant is that that was necessary for the purpose of working this mine.

" I say to you that while that of itself, that is, the taking of coal through there mined in the Weinmann land, would be a trespass so far as this right of way was concerned; if it was reasonably necessary for the purpose of working this mine, if it was such an opening as an ordinarily careful and prudent miner would make, if it was such as ought to have been made, and in propriety should have been made, for the purpose of ventilating this mine, and in good faith, then the taking out of the coal or anything else that might have come from it was simply the using of that right of way for the purpose of working this mine, and there would be no trespass. There is, perhaps, little for you to pass upon as to this, because the testimony would seem to be uncontradicted that this was reasonably necessary. That it was the proper way to ventilate this mine, and that the ventilation of the mine was necessary. In that case it would be no trespass to take the material that came out of it across this surface of Mr. Webber.

" There is in addition to this some evidence that there was other coal mined beyond the Weinmann line, and taken out through this right of way. There doesn't seem to have been much; it seems to have been very little, and the damage would be little or nothing; but if you find that he did take coal, that was not mined within the lines of this forty-two or forty-three acres, out over this right of way, and that it was not necessary for the purpose of opening up this air-shaft, then he would be a trespasser to that extent, and the plaintiff would be entitled to nominal damages for the taking of that coal. You have the facts before you in regard to this matter; the plaintiff would be entitled to at least nominal damages, and probably nothing more in this case, because no particular amount of damages has been proven. You have the facts before you and you will determine that matter.

" [ The other matter is the question of the deposit of gob. It appears here to be uncontradicted that the defendant did deposit some gob upon the surface, at or near the mouth of this mine. The grant does not in terms give the right to deposit gob, but there is a clause in it at the end of the description which may, under a certain finding of facts, include that right. There was a grant, in addition to various things specified, of the appurtenances now in and used in operating the pits opened in said seam or stratum of coal. An appurtenance is a right connected with the enjoyment or use of another thing as principal, and, for the purpose of this case, I instruct you that if this right to deposit was reasonably necessary to the working of the mine, or at least was one usually obtained and exercised in connection with the operation of a mine, and was a right actually being exercised at the time of this grant to Sutton by the party operating the mine, then it would pass as an appurtenance, and the defendant would have the right to a like use of the ground for the purpose of dumping the gob, which it was necessary to remove in mining said coal. The defendant must, as a matter of course, if he has the right, use it in good faith, and with due regard to the rights of the owner of the soil.

" You are to find, gentlemen, whether this right was one usually incident or reasonably necessary to the operation of the mine, and whether it was being actually used at that time, because the language of the grant is, ' the appurtenances now used in operating the pit.' If you so find, and you find that the defendant has not used it in any other way, or in any way beyond what it was used for at that time, and has used it in good faith, and with due regard to the rights of the owner of the surface, then he would not be liable.

" If it was not so used at that time, then it would not pass as an appurtenance now used in operating the pit, and he would have no right to deposit any gob, and would be responsible in damages in case he deposited any whatever, as he admits that he has done; and he would also be responsible if he had gone beyond a reasonable exercise of this privilege. The evidence, however, I think does not show that he did use it beyond the privilege indicated by use, if there was one at the time that the pit was opened, it having been deposited

upon the top of the other piles of gob. It is in evidence that it had been used at other times, as I recollect it.] [7] The jury will correct me if I am mistaken in the testimony. Some of the witnesses would seem to confine the use, not to the ordinary operations of the mine, but merely to the cleaning up of the débris that had accumulated when the mine apparently was lying idle, such as the cleaning out of the drains, and to my mind the evidence indicated that it had only been used at intervals, and not habitually for that purpose; so that the question is properly left to the jury as to whether it was then being used, and as to whether it was a right attached to the mine then being used, and thus an appurtenance."

Defendant's points were among others as follows:

" 1. The uncontradicted evidence in the case showing that the road in evidence was an open and apparent servitude imposed on the land of plaintiff and defendant's lessor during unity of ownership in James Kelly, deceased, for the transportation of all coal underlying the entire farm of said James Kelly, and as a general outlet for said farm, the plaintiff took subject to said servitude; and the plaintiff having established no restriction of said user, the defendant has the right to transport any and all coal underlying the entire farm which was of said James Kelly, and plaintiff cannot recover in this action for the transportation of such coal." Refused. [1]

" 3. The plaintiff cannot recover for the deposit by defendant of gob or refuse if the jury finds that such deposit was reasonably necessary to the operation of the mine, and that such deposit had been made by previous owners. *Answer:* This is refused as put. The grant is of the appurtenances now used; not of all rights that may have been used by the previous owner. The answer is explained in the general charge." [2]

" 4. The defendant has the right to operate the mine in such manner as it has been operated by previous owners. *Answer:* This is refused. The point as put is too broad." [3]

" 6. Under all the evidence the verdict must be for the defendant." Refused. [4]

" 7. There is no evidence that defendant transported over said road any coal other than that taken from under the surface of the Lewis tract of forty-three acres, excepting that coal taken out in driving the air course." Refused. [5]

Verdict and judgment for plaintiff for $50.00.   Defendant appealed.

*Errors assigned* were (1–7) instructions, quoting them.

*S. B. Schoyer, S. Schoyer, Jr.,* with him, for appellant.—Where the owner of an entire tract has imposed an open, visible, permanent and continuous servitude on every part of said tract for the benefit of every other part, and sells one part, the purchaser at public or private sale takes subject to the burden or benefit as the case may be, and the grantor retains the remainder subject to such benefit or burden, and a subsequent purchaser from the grantor takes the part retained with such right or duty annexed thereto: Seibert v. Levan, 8 Pa. 383 ; Kieffer v. Imhoff, 26 Pa. 438 ; Grace Church v. Dobbins, 153 Pa. 294 ; Zell v. Universalist Society, 119 Pa. 390.

Appellant has this right by reason of the further fact that the tract acquired by the Lewises lay in front of the tract acquired by Weinmann, and the only practicable and convenient way of getting out the Weinmann coal was under the surface of and through the coal under the Lewis tract.   This servitude was imposed by Kelly when he opened and operated the pit-mouth on both tracts.   This, as a matter of law, constituted an opening and mining of the entire body of coal under the whole Kelly coal farm : Westmoreland Coal Co.'s Ap., 85 Pa. 344.

*J. S. Ferguson, E. G. Ferguson* with him, for appellee.—Sutton's deed must be taken to define the extent of the grant to him ; he accepted it on the terms therein written.   He therefore bought the Lewis coal with the appurtenances, and as the Lewises themselves held and worked the coal, it cannot be contended with any show of reason whatever that if this coal had still remained in the ownership of the Lewises, Weinmann or anybody else could have taken the Weinmann coal through it and out upon the surface.

It is unnecessary to discuss the matter of the deposit of "gob" on plaintiff's land, for if the verdict can be sustained upon the grounds already referred to, which it undoubtedly can, there can be no reversal.   The taking out of the coal mined in mak-

ing the air current is also immaterial. That question was practically taken from the jury.

OPINION BY MR. JUSTICE THOMPSON, December 30, 1893 :

Mrs. Lewis and Miss Lewis by their deed conveyed to Sutton all the merchantable coal contained in a certain stratum opened, operated and lying beneath the tract specified, together with the free and uninterrupted right of way into, upon and under said land at such points and in such manner as may be proper or necessary for the purpose of taking and carrying away the coal, and also the tracks and tramways in the pit or pits opened in the seam. By deed Sutton granted and conveyed his right and title to the coal to Weinmann of whom appellant (defendant below) was lessee. Upon the surface of appellee's tract there was opened a pit out of which the coal was taken. The coal underlying the adjoining tract owned by Weinmann was also leased by him to the same lessee. He claimed the right to take through this pit the coal underlying such adjoining land, to deposit the refuse at its mouth and to carry the coal so mined to a public road over a way or road used by the former owner when he united in himself the title to the appellee's tract and to that adjoining, and held them as one tract. Appellee (plaintiff below) denied the right to so use the pit which was upon his tract, the surface of which he had bought from Mrs. and Miss Lewis, subject to the grant to Sutton, and because of such use brought suit and recovered in the court below.

Appellant's right to use the pit is by the terms of the grant confined and restricted to the coal lying beneath the tract in question. Its words are clear and explicit, to wit : " All the merchantable coal lying and being," etc., is granted " with the free and uninterrupted right of way," " for the purpose of digging, mining and carrying away the said coal." Under these terms appellant had no right to take through that pit coal from beneath the adjoining tract, except such as may possibly have been required as a part of the mining operation for the purpose of opening up an air-shaft, and necessarily incident to the mining under appellee's tract. If therefore appellant mined coal from beneath the adjoining tract and carried it through the pit in question he became liable

for doing so, and also if in dumping the refuse at the mouth of it he did not do so in good faith with a proper regard to the rights of the owners of the surface, or to an extent beyond the purpose of the grant. But it is ably argued that when the former owner (Kelly) owned these tracts adjoining each other, he was engaged in mining the coal beneath them as one tract, and while so engaged used a road or way running from a pit nearly on the line between the tract bought by Weinmann and part of the tract bought by Mrs. Lewis and Miss Lewis, across Weinmann's tract and near to the pit on appellee's land, and thence to the turnpike; that when Weinmann purchased his tract, this servitude attached to it, and appellee's tract was servient to it, and that as such was the case the conveyance of Sutton to Weinmann, did not, it is alleged, operate to destroy his right to use the pit and the road or way to take out the coal from the adjoining tract. Undoubtedly the principle is settled that where an easement or servitude is imposed by the owner on one portion of his real estate for the benefit of another, that a purchaser of it at a private or judicial sale without an express reservation takes the property subject to the easement or servitude: Zell v. Society, 119 Pa. 390. But the application of this principle in the present case fails. By the terms of the grant to Sutton he became the owner of the merchantable coal under appellee's tract and was entitled to mine the same; but he had no right to mine upon other lands and use the pit for such mining operations, because his grant expressly limits his right to the coal mined and lying beneath the tract in question. Weinmann, standing in Sutton's shoes as his grantee, cannot successfully assert that, because the former owner (Kelly) held the different tracts as one tract and made use of the road or way as stated, he has the right to tack that use of the road or way to this grant to mine coal, and thus make it the means of mining the coal upon other land and transporting it over that of appellee. The former owner of the land in the exercise of his ownership hauled coal over this road or way which passed by both pits to the turnpike. While an owner cannot accurately be said to have an easement upon his *own* land, yet he may alter the quality of two parts of his heritage, and having attached particular qualities to a part and having conveyed it, if such qualities are palpable and manifest, the purchaser takes

it with the qualities which the owner has thus attached to it. In this case the appellant as lessee claimed the right to mine and take coal out of the adjoining tract through the pit on appellee's land and over it, although his lessor had accepted the grant which restricts the use of the pit and the right of way to the mining and hauling of the coal which underlies the tract of which appellee's land was a part. The use of the pit and of the right of way was specifically restricted to the mining and to the hauling of the coal under such tract. Clearly, the acceptance of the grant restricted such use by the lessor and his lessee, and was a complete negation of any claim that the use by reason of the alleged easement appurtenant to the adjoining tract became unrestricted.

Judgment affirmed.