JOHN MADISON et al., Appellants, v. GARFIELD COAL Co. et al.

114 56
125 355

114 56
134 355

114 56
136 37
136 39

114 56
137 4
137 163

114 56
141 229

**Mining Lease:** CONSTRUCTION: *Rentals.* Plaintiff's lease of coal lands to defendants gave them power to mine and remove all underlying coal. The refuse from the various shafts was to be dumped on the surface of plaintiff's land. A right of way over the surface for railway tracks, etc., within specified limits, was given to defendants at a certain rental, with privilege to continue such use at their option after the coal had been exhausted from plaintiff's land. The surface was reserved by plaintiff for agricultural purposes, subject to the rights guarantied by the lease. *Held,* that defendants had the right, under the lease, to use the land to remove coal from adjoining land, and hence plaintiffs could not recover additional compensation therefor.

LADD, J., not concurring.

ADJUDICATION. Where plaintiff sued defendants to enjoin the specified use of leased lands as not within a lease, submitting the question for determination whether such use was proper under the lease, and the case was dismissed on its merits, such adjudication constituted a bar to a subsequent suit by plaintiffs against defendants presenting the same question with reference to defendants' rights under the lease.

*Appeal from Mahaska District Court.*—HON. A. R. DEWEY, Judge.

WEDNESDAY, MAY 15, 1901.

PLAINTIFFS are the owners of a tract of 80 acres of land (limited, however, by reservations to 73 acres), which was, in 1890, leased by them to defendants for the purpose of mining coal. Defendants have been using plaintiffs' land not only to mine coal therefrom, but also for the purpose of running out coal from adjoining land, which they have leased for mining purposes. Plaintiffs having, in 1891, at the time defendants commenced this additional use of plaintiffs' land, served notice on the defendants not to use their land for those purposes, now bring suit for damages in the sum of $17,500 for this alleged improper

use, including therein the dumping of waste on the surface.
Defendants admit the execution of the contract, but deny
that there has been any breach thereof, or any use of the
premises inconsistent with their rights therein.    They also
plead a prior adjudication in their favor in an action
brought in 1891 by plaintiffs to restrain them from this
additional use, in which action plaintiffs' bill was dismissed.
The court, before the plaintiffs had finished the introduction
of evidence as to the amount of the damage, reached the con-
clusion that under the contract defendants had the right
to make such use of the land as plaintiffs complain of, and
therefore directed a verdict for defendants, and from the
judgment against plaintiffs for costs the plaintiffs appeal.—
*Affirmed.*

*J. C. Williams, George W. Seevers,* and *B. W. Pres-
ton* for appellants.

*J. F. & W. R. Lacey,* and *J. O. Malcolm* for appellees.

McCLAIN, J.—I.    Although a prior adjudication, if
it involved the construction of the contract now before us,
would be conclusive in this case, we prefer to consider first
the construction of the contract itself.    Without set-
ting it out in full, we may collect the provisions
which are involved in this controversy as follows:
By its terms the plaintiffs lease to defendants, for the pur-
pose of mining coal, the said coal lands, and give them the
power to mine and remove all coal underlying said lands.
The defendants are to pay for all coal taken out of said
mine at a specified royalty per ton, payable monthly, but
the royalty for each year is to be not less than $250, and if,
during any year, the royalties paid have not amounted to
that aggregate sum, then the balance of such sum is to be
paid at the end of the year.    This minimum royalty per
year is to continue "as long as said mine is operated, not to
exceed twenty-five years, but, if the coal is sooner mined out,
then the royalties are to cease when the coal is exhausted."

The defendants are given the right to secure necessary air and water shafts, and to place "the refuse from said shafts upon said surface in the usual way as is done in operating coal mines; and they shall have the right to dump the waste from the main shaft on the surface, as is done in operating coal mines." The defendants are "to have the right of way over the surface of said land for railway track to shaft, not exceeding 50 feet in width, and also the right of way, not exceeding 150 feet in width, for switches and dump buildings, and any necessary buildings for the operation of said mine at said mine. They are to have sufficient ground to properly operate said mine in the usual manner in which coal mines are operated. That for said right of way and switch grounds they are to pay $20 per year on the first of January of each year." With reference to such rental for right of way it is stipulated that, "if the second party desires to use the right of way upon the land after the coal has been exhausted from the first parties' land, they may continue to do so at a rental of $20 per year during the continuance of the use, to be paid on or before the first day of January of each year." The first party "reserves the surface, except as herein granted, and the right to farm the same, or use it in any manner that he desires, subject to the rights herein granted." It is to be noticed that the lease is "for the purpose of mining coal." Nowhere in the lease is there any language used involving an express limitation of the use to the mining of coal from the land itself. It appears, therefore, that the situation of the parties at the time of making the lease was this: That plaintiffs had an 80-acre tract of land at least partially underlaid with coal, which they desired to have removed on payment of royalty. The removal of this coal would involve the construction of shafts, of underground entries, and of some sort of track on the surface by which the coal could be taken away from the mouth of the shafts; also the dumping on the surface of refuse. The reservation of the surface for agricultural purposes would indicate that the plaintiffs attached

some importance to the occupancy of the surface, and in harmony with this idea it is stipulated that for right of way over the surface the defendants are to pay the additional rental of $20 per year. It may be that, without other provision in the lease, it ought to be construed as relating entirely to the removal of coal from the plaintiffs' land, although no such express limitation is specified; but the parties went further, and expressly provided that the second party might use the right of way upon the land after the coal had been exhausted from the land in question, the rental for the use of the surface right of way being continued during such additional use. What could have been the object of this provision if no coal was to be taken from the shaft on plaintiffs' land except coal from the land itself? Plaintiffs' counsel has not suggested any occasion possibly arising from the taking of coal from plaintiffs' land which would require the use of this right of way after such coal should be exhausted. The parties must, therefore, have contemplated some use for the shaft and the right of way other than the use for the removal of plaintiffs' coal, and it is reasonable to suppose that the parties considered that the continued use of this shaft for the removal of other coal, and the transportation of it over plaintiffs' land, would be sufficiently compensated by the payment of the yearly rental of $20 for the surface right of way while defendants continued to use it. The plaintiffs may very well have considered that such an annual rental for the use of the surface right of way would adequately compensate them for all damages which they would suffer in view of the fact that the surface of the land was suitable for agricutural purposes only, and as to such purposes the continued use of the underground entries for the removal of other coal would be no detriment whatever. It appears from the evidence of John Madison, one of the plaintiffs, who, by the way, had had at the time this contract was made, long experience in coal mining, that plaintiffs were to receive a considerably greater royalty for the coal removed from their land than was paid

by defendant for coal from adjoining land which was leased from other owners at about the same time; and plaintiffs may well have thought that, on the whole, they would be sufficiently compensated for all the use which defendants could make of the land in question. The only possible inconsistency which we find in the lease is that the minimum royalty is to "continue as long as said mine is operated, not to exceed 25 years, but, if the coal is sooner mined out, then the royalty shall cease when the coal is exhausted"; whereas the surface right is to continue after the coal is exhausted. But, taking these two provisions together, it is clearly the intention that, after the coal is exhausted, and the payment of the minimum royalty ceases, the defendants are still to have the use of the surface right of way, and, as we think, impliedly, the use of the underground entries and shafts, at a rental of $20 per year, at least, to the end of the period of 25 years. It appears that the coal on plaintiffs' land is not yet exhausted, and that defendants are still paying at least the minimum royalty per year, and we are not now called on to decide what the situation will be during the balance of the 25 years after plaintiffs' coal is exhausted, nor whether the defendants will have the right to use the underground entries, shafts and surface right of way after the expiration of the 25 years on the payment of the annual rental of $20. Appellants contend that, in any event, there is nothing in the lease authorizing the use of the entries, shafts and surface right of way for the removal of coal from other lands until plaintiffs' coal is exhausted; but, in view of the fact that, as we hold, the lease does imply the right to remove other coal through and over plaintiffs' land at some time during the continuance of the lease, then the privilege must have been contemplated as vesting from the beginning of the lease; and we see no reason why that privilege need have been expressly stipulated for, in view of the general provision that defendants were to use the land for the purpose of mining coal, without restriction, and that it was expressly stipulated that at least the minimum royalty should

be paid to plaintiffs during each year until plaintiffs' coal is exhausted. It is urged for plaintiffs that defendants are under obligations to use reasonable diligence in getting out plaintiffs' coal, but the question whether defendants have used such diligence is not in controversy in the case. No damage is claimed on the ground that defendants have not taken the coal from plaintiffs' land with reasonable diligence. We reach the conclusion, therefore, that under the contract defendants had the right to use plaintiffs' land in the manner stipulated in the lease, not only for the purpose of removing coal from plaintiffs' land, but also for the removal of coal from adjoining land, and that plaintiffs are not entitled to recover for such additional use any other compensation than that provided for in the lease.

II.    Defendants rely also upon the result of an action brought in 1891, which they insist concludes plaintiffs with reference to the construction of the contract which plaintiffs insist upon in this case. In the former action plaintiffs alleged, among other things, that by the terms of the lease there was "no agreement, either expressed or implied, whereby the defendants have the right to mine coal from other lands, and haul the coal through the entries on the plaintiffs' land, and dump the waste upon plantiff's land"; that defendants then were, and had been for some time, hauling coal from other land through the entries on plaintiff's land, and throwing the waste upon the plaintiffs' land, and that defendants were projecting and running other entries into other lands with the intent of mining coal from under other lands; that, when defendants entered into said lease, they entered into no arrangements or agreement with plaintiffs that they intended or desired to use the underground roadways commonly known as "entries," for the purpose of hauling coal, slack, and other debris from other mines and dump the said waste upon plaintiffs' land; that these acts were with the intent to unload the waste and debris upon plaintiffs' land, thereby injuring the plaintiffs greatly; that the resulting dam-

age to plaintiffs was an irreparable injury; that plaintiffs had no remedy therefor, either at law or in equity, to recover damage from the defendants, and that plaintiffs were remediless, both at law and in equity, if the defendants were permitted to haul coal from other lands through the entries on plaintiffs' land; that by the lease in question plaintiffs at no time, or under no circumstances, intended that defendants should have any other or greater rights in the premises save and except a right to mine the coal therefrom, and to use a sufficient amount of the surface thereof for the purpose of properly mining the said coal; and that the right to operate a mine on said land and mine coal from other land, using plaintiffs' land for underground railways and as a place upon which to dump waste, was not intended nor granted by the plaintiffs; and the prayer of plaintiffs was that defendants be enjoined from hauling coal through the entries on plaintiffs' land from other lands than the plaintiffs', and from dumping waste and debris from other lands upon the plaintiffs' land, and from operating said coal mines other than the coal mines of the plaintiffs. There were other allegations of wrong on the part of the defendants, and other demands for relief, which are not here material. Defendants' answer admitted the lease, and admitted that defendants were working coal upon other lands than those of plaintiffs, and admitted that they intended to do so, and alleged that they had the right to do these acts under the contract as understood and contemplated by the parties thereto; also that plaintiffs were not without adequate remedy at law, and asked that plaintiffs' petition be dismissed on the merits, and that defendants have judgment for costs. The decree of the court recited that, "the evidence of all parties having been introduced, and the court, having been fully advised in the premises, finds, and it so orders, that the plaintiffs' petition be dismissed on its merits," and judgment was rendered for defendants for costs. It appears that in the same action defendants introduced a cross bill asking the refor-

mation of the contract so as to make it show that defendants were entitled to the rights claimed by them under the lease. This cross bill was dismissed, but, in view of the adjudication on the petition and answer, it is plain that affirmative relief to defendants was unnecessary, and that the dismissal of the cross bill was not an adjudication that defendants did not have, under the contract as it existed, the rights which they claimed in their answer. Now, with reference to this adjudication, it is claimed by appellants, that it might have been made on the ground that plaintiffs had an adequate remedy at law, but this contention is not tenable. Such an objection, if valid at all, would have been one appearing on the face of plaintiffs' bill, and might have been raised by demurrer; and, even though raised by answer, it would not go to the merits of the case, whereas the decree of the court was that plaintiffs' bill be dismissed on its merits. It is provided by Code, section 3771, that the "judgment must, if it is rendered on matter in abatement, and not on the merits, so declare"; and under this section it has been held that, if the record does not disclose that the suit was determined upon a plea of abatement, it is presumed that the judgment was rendered upon a defense that would constitute a bar to the action. *Garretson v. Ferrall,* 92 Iowa, 728. We fully recognize the rule that a former adjudication, when pleaded in a case founded on a different cause of action, must be shown to have involved the very question at issue in the case in which the adjudication is pleaded. *Bell v. Merrifield,* 109 N. Y. 202 (16 N. E. Rep. 55); *Hanna v. Read,* 102 Ill. 596; *Cromwell v. Sac County,* 94 U. S. 351 (24 L. Ed. 195); *Russell v. Place,* 94 U. S. 606 (24 L. Ed. 214); *Foye v. Patch,* 132 Mass. 105; 2 Black, Judgments, 506. But some of these cases are also direct adjudications to the effect that, although the subject-matter of the second suit may be different from that of the first, yet, if the suits are between the same parties, the adjudication of any particular question involved in the first suit will be conclusive in the second. In this former suit

the question. was distinctly presented on the record, and submitted to the court for determination, whether, under the lease, defendants were entitled to use the entries, shafts, and right of way on plaintiffs' land for the purpose of removing coal from adjoining lands. If defendants had not this right under the lease, then the plaintiffs were entitled to an injunction restraining defendants from a use of plaintiffs' lands not authorized by the lease. *Kraft v. Welch,* 112 Iowa, 695. The denial to plaintiffs of any relief was an adjudication that defendants' contention as to their rights under the lease was well founded. Exactly the same question with reference to the rights of defendants under this lease is presented in the case now before us, and we must hold that the prior adjudication constitutes a bar to plaintiffs' present cause of action. As supporting our conclusion, see *Goodenow v. Litchfield,* 59 Iowa, 226; *Newby v. Caldwell,* 54 Iowa, 102; *Whitaker v. Johnson County,* 12 Iowa, 595; *Hodge v. Shaw,* 85 Iowa, 137; *Keokuk Gaslight & Coke Co. v. City of Keokuk,* 80 Iowa, 137; *Hunter v. Railway Co.,* 76 Iowa 490; *Bissell v. Spring Valley Tp.* 124 U. S. 225 (8 Sup. Ct. Rep. 495, 31 L. Ed. 411); *Thorn v. Newsom,* 64 Tex. 161 (53 Am. Rep. 747). Therefore the prior adjudication is a complete bar to plaintiffs' action, and, without regard to such defense, plaintiffs are not entitled to recover under the terms of the lease.—Affirmed.

Ladd, J.—It is quite enough that this contract has been once construed, and, as the former adjudication is conclusive, and may not be questioned in this action, the first portion of the opinion is superfluous, and involves the evident inconsistency of deciding what is held to have been fully adjudicated in another action. I concur in the conclusions reached in the second portion of the opinion only.