# CHARLESTON.

ICE *v.* MAXWELL *et al.*

Submitted June 8, 1910.    Decided December 19, 1911.

APPEAL AND ERROR—*Second Appeal—Law of the Case.*

This is a review of this case on writ of error to a judgment rendered in a second trial. There was also a review by this court of the first trial, reported in 61 W. Va. 9. The law governing this review of the case will be found in the syllabus to the former review.

Error to Circuit Court, Randolph County.

Action by E. Clark Ice against W. B. Maxwell and others. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*C. H. Scott* and *H. G. Kump,* for plaintiffs in error.

*James A. Bent* and *Samuel T. Spear,* for defendant in error.

WILLIAMS, PRESIDENT:

Plaintiff recovered a judgment for $500 against W. B. Maxwell, L. P. Loudin, William Flint and J. A. Cunningham, and they have obtained this writ of error. This case was reviewed upon a former writ of error, and will be found reported in 61 W. Va. 9.

Plaintiff's suit is for services rendered in procuring a purchaser for a tract of timber land in Randolph county controlled, and later owned, by defendants, pursuant to an alleged oral agreement that for such services he should be paid $500. That he did procure a purchaser and introduce him to defendants, and that defendants thereupon began negotiations with him, which in a short time thereafter ended in their selling the land

to him, are undisputed facts. In relation to a number of facts, however, the testimony of the plaintiff and of the defendants is irreconcilably in conflict. But as to the credibility of witnesses, the weight of this testimony, the jury were the judges. We cannot disturb the verdict when it rests upon conflicting testimony of witnesses.

At the time plaintiff was employed to find a purchaser defendants were not the owners of the land in question, but Mr. Cunningham had an option contract with the owners to purchase it at a certain price. That option expired on the 28th day of February, 1903. It was on the 11th of March following that plaintiff introduced to defendants the man who purchased from them. On the day before the option expired, the land was taken over by defendants. It was then conveyed by the owners to L. P. Loudin, trustee, who held it in trust for himself and the others in the following proportions, viz: Flint and Maxwell each a fourth, Loudin one-eighth, and Cunningham three-eighths. On the same day a written declaration of trust was signed by all four of the defendants showing the several interests as above stated. Prior to that time Mr. Maxwell had become jointly interested with Mr. Cunningham in the option, and, not finding a purchaser and seeing the option about to expire, they decided to purchase the land themselves, and did so, by interesting the two other defendants, Loudin and Flint, as partners. They bought the land for the purpose of speculation, and were as anxious to find a purchaser after the 18th of February, as before. The cause for limiting plaintiff to the 28th of February as the time in which he could find a purchaser, was removed by their taking over the land themselves, and by their continuing desire to sell, and they never notified plaintiff of their own purchase of the land, but apparently permitted him to continue his efforts to find a purchaser, without any new agreement or understanding. Being now the owners, they had the power to extend plaintiff's time, as well as the opportunity to receive the benefit of his services. Whether or not the time was extended, was a fact which the jury might have inferred from the facts and the conduct of the parties.

Plaintiff testifies that on the day the purchaser with whom he had been in correspondence, arrived in the city of Elkins,

he went to Mr. Maxwell and asked him if the land was still for sale, and told him, if it was, he would bring the man to his office, and introduce him to him, and that Mr. Maxwell replied that the land was still on the market, and that the man had come just at the right time, because Mr. Cunningham was in town, and could show him the timber thoroughly and would more probably make a sale than anybody else. He says Mr. Maxwell told him to bring the party around, and that he did so, and introduced him to Mr. Maxwell and Mr. Cunningham. He also says that before introducing the purchaser, he asked Mr. Maxwell what figures he should price the land to him, and that Mr. Maxwell replied that he had better price it at $31 per acre, and give them a chance to drop a little on it. The land was sold to this purchaser at $27 per acre. After the sale was consummated, and the consideration, or a portion of it paid, $100 was left in the hands of Mr. Maxwell to pay plaintiff for his services, defendants admitting that he was entitled to something, but claiming that, as the land had not been sold before the 28th of February, and was sold for less than $30 an acre, plaintiff was not entitled to $500, as per the original agreement. But if plaintiff's testimony is true, it tends to prove a waiver of the time limit in the contract of employment, or an extension, rather, of the original agreement. Defendants accepted the benefit of plaintiff's services, after the 28th of February, and at a time when his services seem to be just as beneficial to them as if they had been rendered before the 28th of February. Point five of the syllabus, declared by this Court on the former hearing, is binding on both this Court and the litigants. It is the law of this case, whether it correctly states the law, or not. *Pennington* v. *Gillaspie,* 66 W. Va. 643. By that law if plaintiff's testimony is true, defendants are liable for the sum fixed by the agreement.

Seven instructions were given on behalf of plaintiff. It is useless to review them *seriatim,* as they involve no novel legal proposition. It suffices to say that we have carefully considered them, and find that they conform to the law as announced on the former hearing.

Five instructions asked for by defendants were refused. As an abstract proposition of law, No. 1 is correct, but if applied

to the facts of this case, it would be misleading, because it ignores the question of any implied extension of time beyond the 28th of February, for plaintiff to find a purchaser. Nos. 2 and 4 are bad, because they are confusing and misleading. They would lead the jury to believe that the purchase of the land by defendants themselves would defeat recovery unless there was a new contract of service made thereafter, or an express extension of the old one. This, we have already said, is not the law to apply to this case. Defendants' purchase under the option, and the conveyance of the land to Loudin, trustee, for all the defendants, does not defeat plaintiff's right to recover on the original contract of service, because it is admitted that he furnished a purchaser to whom defendants afterwards sold. That the purchaser was introduced after the 28th of February, and the sale made to him at a price under $30 per acre, does not defeat recovery in view of the law of this case, above referred to. By accepting plaintiff's services, by selling to the purchaser whom he found and introduced to them, defendants became liable under the original agreement.

No. 3 is objectionable, and was properly refused, because there is no evidence whatever that plaintiff's services were to be gratuitous. And No. 5 is bad because it introduces the element of a new, or additional, contract concerning which there is no evidence offered, by either party.

But for the special contract, plaintiff might have recovered a judgment two or three times as large, on a *quantum meruit,* under the common *assumpsit* counts. His evidence tends to prove that such service as he rendered was reasonably worth much more than he had agreed to accept.

We find no error calling for a reversal and will affirm the judgment.

*Affirmed.*