MARY CHAFIN *v.* GAY COAL & COKE COMPANY

(No. 7367)

Submitted April 19, 1933. Decided May 2, 1933.

(Rehearing denied June 9, 1933)

*Chas. L. Estep,* for plaintiff in error.
*Livezey, Hogsett, McNeer & Delaney,* for defendant in error.

824

HATCHER, JUDGE:

This is an action of trespass on the case to recover damages for an alleged unlawful use of plaintiff's property. The plaintiff was awarded a judgment of $2,632.41, and a writ of error was granted the defendant.

This action is the aftermath of the chancery suit between the same parties, reported in 109 W. Va. 453, 156 S. E. 47, which see for a detailed statement of the matters connected with the litigation and for a map of the lands subjected by the use. Briefly, the defendant is the lessee of the coal on the Mounts tract of 850 acres with the usual surface rights necessary to mine the coal of that tract. The plaintiff is an heir of the original lessor and shares in the royalty from the operation. The tract was partitioned after the coal plant was constructed, and the plaintiff now owns lots Nos. 17 and 11, containing 4.4 acres and 2.14 acres, respectively. These lots are situate next to the railroad on the so-called front of the tract. Five tenement houses and other necessary improvements are on lot 17. The sand house is on lot 11 and the railroad "supply track" crosses it. All of the improvements on lots 17 and 11 were made by defendant in connection with the operation of the Island Creek Seam on the 850 acres. That seam was worked diligently by defendant (according to former opinion) from 1905 to 1927, during which the coal was all mined except that contained in the pillars. Due to pressure, the pillar coal was not firm and as a business expediency defendant leased the Island Creek coal in an adjoining tract of 151 acres, and mingled the two coals in order to dispose of the pillar coal. With the exception of plaintiff, permission was obtained from each of the several owners of the lots crossed by defendant's tramway, to haul the coal from the 151 acres over the 850 acres. Plaintiff asked $40,000.00 of defendant for her interest in the Mounts estate, which was refused. At that time (1927) she did not own lot 11, but did own lot 17, which was then crossed by the tramway. Upon rejecting plaintiff's price, the defendant at great expense moved its tramway off lot 17. The plaintiff subsequently acquired lot 11. Nothing whatever was placed on either of the two lots after the 151 acres was leased.

In the former suit, the plaintiff sought to enjoin defendant from using her lots, etc., for any purpose connected with min-

ing and transporting the coal from the 151 acres, on the ground that such use was an additional and excessive burden on her property and was a trespass. We determined in that suit as follows: "It is questionable if there is any additional servitude on lots 11 and 17. The use complained of cannot be considered as a trespass, for defendant is there by right. On the other hand, plaintiff is benefited by the continuous and successful operation of the mine. * * * Equities must be balanced. And if the injury done to a servitude by grant is capable of being ascertained and compensated at law and inconvenience and loss to other party would be serious, generally the bill will be dismissed reserving to plaintiff his right to proceed at law. * * * To enjoin defendant from bringing its coal from the 151-acre tract through and over the Mounts land to its tipple simply because of this slight additional servitude on the surface of plaintiff's lots would occasion serious loss to defendant and would afford plaintiff very little benefit. The decree (below refusing injunction) will be modified to the extent only of saving to plaintiff her right to sue at law for damages, and as modified, will be affirmed."

Our former holding became the *law of the case*. See generally *Price* v. *Campbell*, (Va. 1804) 5 Call 115; *Bank* v. *Craig*, (Va. 1835) 6 Leigh 399; *Camden* v. *Werninger*, 7 W. Va. 528; *Henry* v. *Davis*, 13 W. Va. 230; *McCoy* v. *McCoy*, 29 W. Va. 794, 2 S. E. 809; *Seabright* v. *Seabright*, 33 W. Va. 152, 10 S. E. 265; *Johnson* v. *Gould*, 62 W. Va. 599, 59 S. E. 611; *Beecher* v. *Foster*, 66 W. Va. 453, 66 S. E. 643; *Ice* v. *Maxwell*, 70 W. Va. 186, 73 S. E. 274; *Campbell* v. *Lynch*, 88 W. Va. 209, 106 S. E. 869; *Kaufman* v. *Catzen*, 100 W. Va. 79, 130 S. E. 292. See specially the "all fours" case of *Madison* v. *Coal Co.*, 114 Iowa 56, 63-64, 86 N. W. 41.

The gist of our former decision is that under all the circumstances the additional servitude of plaintiff's property was "slight", but she might recover at law such damages as could be ascertained, for the injury *to the servitude*. Ignoring that limitation in this action, the plaintiff plead *an unlawful use of her two lots* and secured her verdict here upon evidence of a custom in Logan County to pay from one to two cents a ton *for the use* of "front lands for bringing coal from back lands over them to the railroad and shipping it." That evidence

relates solely to price paid for the purchase of an unrestricted easement over property not to a *slight additional* burden on an easement already secured and located—to compensation for the use of property and not to compensation for *slight* damage to an established use. The evidence was therefore inadmissible.

There is no evidence of decreased rental value of plaintiff's property as in *Ry. Co.* v. *Malott*, 135 Ind. 113, 118, 34 N. E. 709, or of diminution of the value of her property as in *The Redemptorists* v. *Wenig*, 79 Md. 348, 355, 29 A. 667, or that her property has a location of strategic value in relation to the 151-acre coal. There is no evidence of any particular damage. In fact her witnesses admitted that her property had suffered no physical damage of any kind whatever because of the transportation of the coal from the 151 acres. Her damage is theoretical and not practical. As our former decision (balancing the equities) forbids punitive or exemplary damages, the infringement on her rights cannot be dealt with here as it would be were she a stranger to the 850-acre lease and to the defendant.

Plaintiff contends that she proved many material facts before the jury not submitted to the court in the chancery suit. For example, she showed in this action that from January 1, 1928, to July 1, 1931, 77.8% of the coal mined by defendant came from the 151 acres and 22.2% came from the Mounts lease. In the chancery suit, however, it appeared that from January 1, 1928, to July 1, 1929, 71% (approximately) of the coal mined by defendant came from the 151 acres and 29% (approximately) came from the Mounts lease. The later production percentages as well as the other additional proof all relate to the degree of the increased servitude and do not affect its character. Proof in this action of a slightly greater degree of additional burden than that proven in our former decision does not alter its effect; nor does the supplemental proof herein profit the plaintiff in view of lack of evidence relating to any apparent damage which the increased burden may have occasioned.

The principle governing such cases is old law and firmly established. In order to warrant a substantial recovery the plaintiff must show not only a legal injury but also an actual perceptible resultant damage. "Ordinary damages," says

Sir Frederick Pollock, "are a sum awarded as a fair measure of compensation to the plaintiff, the amount being, as near as can be estimated, that by which he is the worse for the defendant's wrong doing." Pollock on Torts (13th Ed.), p. 191. Cooley describes (without the involution of Sir Frederick) the recovery permissible as "an award of money estimated as an equivalent for the damage suffered." Cooley on Torts (4th Ed.) sec. 43. Sutherland says: "The universal and cardinal principle is that the person injured shall receive a compensation commensurate with his loss or injury, and no more." Sutherland, on Damages (4th Ed.) sec. 12. More explicit than either of the above pundits is the Supreme Court of New Jersey. "It is a fundamental principle applicable * * * to torts, that in order to found a right of action there must be a wrongful act done and a loss resulting from that act. * * * The wrong done and the injury sustained must bear to each other the relation of cause and effect." *Warwick* v. *Hutchinson,* 45 N. J. L. 61, 65. Accord: 8 Am. & Eng. Ency. Law, on Damages, p. 560; 8 R. C. L., on Damages, secs. 4 and 5; 17 C. J., on Damages, secs. 59 and 60; *Newbrough* v. *Walker,* (1851) 8 Gratt. 16; *Watts* v. *Rr. Co.,* 39 W. Va. 196, 19 S. E. 521 (point 8 of syl.); *Douglas* v. *Rr. Co.,* 51 W. Va. 523, 533-4, 41 S. E. 911.

A specific application of the above principle to a situation similar to the one in the instant case, was made in *Webber* v. *Vogel,* 159 Pa. 235, 238, 28 A. 226. There the following charge to the jury was approved: "The plaintiff would be entitled to at least nominal damages, and probably nothing more in this case, because no particular amount of damages has been proven." That principle was applied again in the closely parallel case of *Springer* v. *Fuel Co.,* 196 Pa. 156, 162, 46 A. 370. Because of certain circumstances in that case, vindictive damages were denied the plaintiff for a trespass, although he and the defendant were strangers, and the court held: "In an action of trespass by an owner of coal land from under which the coal has been removed against an owner of contiguous coal land, who has removed his coal through the entries under the plaintiff's lands, nominal damages only can be recovered, where there is no evidence of actual injury." That principle was also applied in our related case of *Mc-*

*Whorter* v. *Clarksburg,* 111 W. Va. 9, 14. 161 S. E. 577, 580. That case involved an increased servitude of a flowage easement, and we held: "The recovery of the plaintiff should be limited to *the damage due to the additional flowage, if any,* caused by the new dam." Therefore, under the evidence herein, plaintiff was entitled merely to nominal damages. See generally, Sutherland, *supra,* sec. 9.

The judgment of the lower court is accordingly reversed, the verdict set aside, and a new trial awarded defendant.

*Reversed; verdict set aside; new trial awarded.*