# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Donald Medley,**
**Petitioner Below, Petitioner**

**vs.)  No.  21-0113** (Mingo County 17-C-35)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Donald Medley, by counsel Cullen C. Younger, appeals the January 6, 2021, order of the Circuit Court of Mingo County that denied his petition for post-conviction habeas corpus relief. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex, by counsel Patrick Morrisey and Andrea Nease Proper, responds in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2014, petitioner was found guilty of the first-degree murder of Evelyn Farnum (the "victim"), with whom he had shared a home in Mingo County. At the time of his offenses, petitioner was forty-five years old and the victim was fifty-five years old. The evidence at the trial in the underlying case revealed the following: On December 30, 2012, the victim spent the day with her daughter, Andrea Ferris, at Ms. Ferris's home. At about 10:00 p.m., Ms. Ferris drove her mother home. Upon returning to her own home, Ms. Ferris called her mother's residence and petitioner answered. Ms. Ferris asked to speak to her mother and petitioner stated that she was "passed out." Ms. Ferris asked petitioner to wake her up and petitioner stated that "she won't wake up."

The following day, petitioner went to Ms. Ferris's residence and informed her that her mother "took off last night" and that he did not know where she went. According to Ms. Ferris, petitioner was shaking throughout the morning and drinking heavily to the point that she asked him to leave because he was cursing and scaring her children.

1

The next morning, January 1, 2013, Ms. Ferris went to petitioner's and her mother's residence to check on her mother because her mother's vehicle was still not at the residence. Ms. Ferris encountered petitioner on the sofa "zoned out" with no lights or television on. She noticed that her mother's purse, cell phone, and cigarettes were still in her bedroom. However, petitioner denied knowing anything about the victim's whereabouts. At that point, Ms. Ferris filed a missing person's report with the West Virginia State Police.

On January 4, 2013, the police received a call from brothers Jonathan and Jeffrey Harrison who told the police that they saw petitioner push Ms. Farnum's car into a lake near the couple's residence. Petitioner's brother, Greg Medley, advised the police that petitioner said he needed help to get rid of Ms. Farnum's body and asked him to come to Laurel Lake. Thereafter, the police recovered Ms. Farnum's Jeep from Laurel Lake with her body inside. An autopsy revealed that Ms. Farnum died from manual strangulation and there was additional evidence of assaultive injuries to her face and head.

On January 5, 2013, petitioner gave a statement to the police in which he confessed to murdering Ms. Farnum and concealing her body. He stated that he and the victim had been arguing and that the victim slapped him. Petitioner stated that he choked Ms. Farnum about the neck and hit her in the head. He then said that he put her body in the Jeep and pushed the Jeep into the lake.

Petitioner was indicted for the first-degree murder of Ms. Farnum and concealment of a deceased human body. Following a jury trial in May of 2014, petitioner was convicted of both counts. By order entered June 10, 2014, the circuit court sentenced petitioner to life in prison, with mercy, for first-degree murder; and one to five years in prison for concealment of a deceased human body. The court ordered the two sentences to run consecutively.

Petitioner appealed raising the following assignments of error: failing to suppress his statement to the police because he was questioned without counsel; insufficient evidence; conflicting jury instructions; withholding exculpatory evidence (fingernail clippings and blood spatter); failure to preserve the victim's cell phone; and cumulative error. We affirmed petitioner's conviction by memorandum decision entered May 15, 2015.

In that decision, we rejected petitioner's claim that the State withheld exculpatory evidence in the form of the victim's post-mortem fingernail clippings in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, we found that

> In Syllabus Point 2 of *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007), we held that

> > [t]here are three components of a constitutional due process violation under [*Brady v. Maryland* ] and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982):(1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Petitioner fails to establish any of the three requirements quoted above. He admits that he does not know whether the undisclosed evidence mentioned above would have been exculpatory; he cannot show that the State suppressed it; and he cannot show that the evidence was material such that the nondisclosure prejudiced him at trial.

*State v. Medley*, No. 14-0729, 2015 WL 2364302, at *4-5 (W. Va. May 15, 2015)

Petitioner also argued on direct appeal that the State failed to preserve the victim's cellular telephone in violation of *State v. Osakalumi*, 194 W. Va. 758, 461 S.E.2d 504 (1995). We found that:

the circuit court conducted a pre-trial hearing regarding the phone and learned from the victim's daughter that, after reviewing the contents of the phone with the police, the police returned the phone to her. According to the daughter's testimony, the phone "was a Walmart flip-phone; just one of them pre-paid pay-as-you-go phones," and that the last time it was used was weeks before the murder and there was nothing relevant on the phone. The daughter further explained that poor cell service limited her mother's use of the phone. The police never catalogued the phone as potential evidence; it was not introduced as evidence at trial; and it played no role in the State's case against petitioner.

*Medley*, 2015 WL 2364302, at *5. Accordingly, we found no error in the State's failure to preserve the victim's cell phone.

On February 23, 2017, petitioner filed a petition for a writ of habeas corpus in the circuit court in which he raised, among other things, the victim's fingernail clippings and her cell phone. By order entered January 6, 2021, the habeas court denied relief, finding, among other things, that petitioner failed to introduce any evidence that the victim's fingernail clippings would have been exculpatory and that the investigating officers had no recollection of being in possession of the victim's cell phone. Thus, the habeas court found no constitutional due process violations under *Brady* or *Hatfield* regarding the victim's fingernail clippings or cell phone. The habeas court also found there was no evidence that the jury was exposed to any prejudicial publicity during petitioner's trial.

Petitioner now appeals the circuit court's denial of habeas relief.

In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

Petitioner raises two assignments of error on appeal. Petitioner first argues that the habeas court wrongfully rejected his claim that the State suppressed material evidence at trial, i.e., the victim's fingernail clippings and her cellphone, to his prejudice. Petitioner notes that evidence discovered during a police investigation is imputed to the State; therefore, he argues that the State had a duty to disclose the victim's fingernail clippings and the cell phone.

As did the circuit court, we apply Syllabus Point 2 of *Youngblood* (quoted above) to petitioner's claim.

At trial, the victim's daughter testified that following her mother's death, she reviewed her mother's cell phone with the police who eventually returned the phone to her. The daughter said she "set [the phone] down somewhere" but did not know where it was. Police officers testified that they did not recall seeing the cell phone in the victim's home or discussing the cell phone with the victim's daughter. Petitioner again argues that the State should have secured the victim's personal items, including her cell phone, so they could be thoroughly investigated before they were released to her family. Petitioner contends that, because the police did not do so, he was deprived of a material piece of evidence that might have changed the outcome of his trial.

Petitioner further argues that, at his trial, the State wrongfully suppressed forensic evidence material to his defense, including post-mortem fingernail scrapings from the victim's hands. Petitioner contends that the circuit court erred in finding that he was not deprived of that evidence, which he claims might have changed the outcome of his trial. Petitioner highlights the following testimony from his trial: (1) the victim's cause of death was found to be strangulation; (2) a forensic pathologist testified that his office examined the victim and took a scrape sample, scalp hair, pubic hair, and fingernail scrapings, and that it was up to law enforcement to process that evidence; (3) an employee at the West Virginia State Police Crime Laboratory testified that the lab never received the victim's fingernail scrapings or any request from the police to examine such scrapings; and (4) a trooper who investigated the case testified that there was no need to test the scrapings because petitioner confessed to killing the victim.

We find petitioner is entitled to no relief as this assignment of error was previously and finally litigated in petitioner's direct appeal. As noted above, we rejected petitioner's claim that there was a *Brady* violation relating to the State's alleged failure to produce the victim's fingernail scrapings on the ground that petitioner "fail[ed] to establish any of the three requirements" found in Syllabus Point 2 of *Youngblood*. *Medley*, 2015 WL 2364302, at *4-5. As for the cell phone, we found in petitioner's direct appeal that "[i]nsofar as petitioner alleges that the failure to preserve the [victim's] phone violates our holding in *Osakalumi*, we disagree." *Medley*, 2015 WL 2364302, at *5. A petitioner may not raise the same grounds in a direct appeal and in a proceeding in habeas corpus. *See State ex rel. Mullins v. Rubenstein*, No. 16-0046, 2017 WL 944056, at *2 (W. Va. Supreme Court, Mar. 10, 2017) (memorandum decision) ("[T]he circuit court determined that all but one of the assignments of error raised in petitioner's request for habeas relief were previously raised in his direct appeal and were fully and finally adjudicate therein . . . . We agree with the circuit court that these alleged errors were not again reviewable in the habeas proceeding and, likewise, decline to address them in the present appeal.").

4

Petitioner's claims are also barred by the doctrines of the law of the case, collateral estoppel, and/or res judicata. The law of the case doctrine prohibits reconsideration of matters previously heard by the Court. "The decision of a court of final resort upon a given state of facts becomes the law of the case in regard to such facts." Syl. Pt. 1, *Chafin v. Gay Coal & Coke Co.*, 113 W. Va. 823, 169 S.E. 485 (1933) (citing Herman, the Law of Estoppel, page 118). "The general rule is that when a question has been definitively determined by this Court its decision is conclusive on parties, privies and courts, including this Court, upon a second appeal or writ of error and it is regarded as the law of the case." Syl. Pt. 1, *Mullins v. Green*, 145 W. Va. 469, 115 S.E.2d 320 (1960). West Virginia Code § 53-4A-1(a) "allows for post-conviction habeas corpus review 'if and only if' the contention or contentions raised by the petitioner have not been previously and finally adjudicated or waived in the petitioner's criminal trial and appeal or in previous habeas corpus proceedings." *Bowman v. Leverette*, 169 W. Va. 589, 591, 289 S.E.2d 435, 437 (1992). Further,

> W.Va.Code § 53–4A–1(d) [1967] allows a petition for post-conviction habeas corpus relief to advance contentions or grounds which have been previously adjudicated only if those contentions or grounds are based upon subsequent court decisions which impose new substantive or procedural standards in criminal proceedings that are intended to be applied retroactively.

*Id.* at Syl. Pt. 1.

Petitioner is also collaterally estopped from reraising the issues decided in his direct appeal. While similar to the law of the case doctrine, collateral estoppel "serves to estop the relitigation by parties and their privies of any right, fact or legal matter which is put in issue and has been once determined by a valid and final judgment of a court of competent jurisdiction." *State v. Miller*, 194 W. Va. 3, 9, 459 S.E.2d 114, 120 (1995) (internal quotations and citations omitted). Notably, collateral estoppel applies to both criminal and civil cases. *Id.* at 10, 459 S.E.2d at 121 (citing *United States v. Ragins*, 840 F.2d 1184, 1194 (4th Cir. 1988); *State v. Porter*, 182 W. Va. 776, 392 S.E.2d 216 (1990)).

> Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Miller*, 194 W. Va. at 9, 459 S.E.2d at 120. Here, all four conditions are met. First, the issues presented herein, regarding the victim's cell phone and fingernail scrapings are the same as those presented in petitioner's direct appeal. That is, petitioner's fourth and fifth assignments of error in his direct appeal are identical to his first assignment of error in this habeas appeal. Second, the memorandum decision issued in petitioner's direct appeal that addressed each assignment of error raised therein is a final adjudication on the merits. Third, because the parties are the same, there is privity of parties. Fourth, the party against whom the doctrine was invoked had the opportunity to litigate those issues fully and fairly.

5

The doctrine of res judicata also preempts duplicative litigation.

> In general, the post-conviction habeas corpus statute, W.Va.Code, 53-4A-1 et seq. (1967) contemplates that every person convicted of a crime shall have a fair trial in the circuit court, an opportunity to apply for an appeal to this Court, and one omnibus post-conviction habeas corpus hearing at which he may raise any collateral issues which have not previously been fully and fairly litigated.

*Losh v. McKenzie*, 166 W. Va. 762, 764, 277 S.E.2d 606, 609 (1981). However, once an issue has been fully litigated and ruled upon, *res judicata* will bar subsequent review. *Id.* at 765, 277 S.E.2d. at 609; *see also Miller*, 194 W. Va. at 9, 459 S.E.2d at 120 (explaining that "[r]es judicata generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or the issues that could have been decided in the earlier action. . . . A claim is barred by *res judicata* when the prior action involves identical claims and the same parties or their privies. Collateral estoppel, however, does not always require that the parties be the same. Instead, collateral estoppel requires identical issues raised in successive proceedings and requires a determination of the issues by a valid judgment to which such determination was essential to the judgment." (Citations omitted.)). Thus, for these reasons, petitioner is not entitled to a second review regarding the victim's cell phone or fingernail scrapings.

Regarding petitioner's claim of a *Youngblood*/*Brady* violation, it is not supported by the evidence. Here, even if petitioner's first assignment of error – that the victim's fingernail clippings and her cell phone were not properly disclosed by the State – was properly before the Court, petitioner could not have succeeded on the merits of that claim. To do so, petitioner had to satisfy Syllabus Point 2 of *Youngblood* and show that the evidence was (1) "favorable to the defendant as exculpatory or impeachment evidence; (2) . . . [was] suppressed by the State, either willfully or inadvertently; and (3) . . . [was] material, i.e., it must have prejudiced the defense at trial." Petitioner cannot satisfy these requirements. At petitioner's trial, there was no exculpatory or impeachment evidence regarding the victim's fingernails. As the DNA analyst testified, she did not receive any fingernail clippings. Further, Officer Dean testified that fingernail scrapings were unnecessary because petitioner confessed to the murder. As for the victim's cell phone, petitioner alleged that the State had it in its possession at one point and that there "*could*" have been exculpatory or impeachment evidence on it. However, petitioner failed to set forth proof of any such exculpatory or impeachment evidence given that the victim's daughter testified that (1) the phone was a pay-as-you-go flip phone and not a smart phone, (2) she was not sure that the phone could be used to send text messages, (3) neither she nor her mother had cell phone service at their homes, and (4) the last time the phone was used was at least eighteen days before the murder. The victim's daughter further testified that (1) she thought she showed the phone to the investigating officers, but she was not sure; and (2) she did not give the phone to the officers; and (3) she had no idea where it was. Two of the investigating officers testified that they never saw the phone and a third investigating officer said that he did not recall looking at the phone with the victim's daughter. None of this evidence was suppressed by the State. Finally, petitioner cannot show prejudice because he fails to set forth what evidence an examination of the fingernail clippings or the phone would have shown.

In petitioner's second and final assignment of error, he argues that the circuit court improperly found that petitioner's claim – that the "publicity of the trial" negatively influenced the outcome of his case – lacked merit. At issue in this assignment of error is an alleged prejudicial report from a local radio station on the second day of petitioner's trial. The report noted that petitioner admitted to strangling the victim. In response, petitioner's counsel asked the court to sequester the jury and to allow the defense to question the jurors regarding whether they heard the radio station's report. It appears from the record that the court did not question the jurors and proceeded with trial. However, the court did tell counsel that they had to the end of the day to resolve the matter.

In the order on appeal, the habeas court found that petitioner's claim, that the publicity regarding his trial negatively influenced the outcome, lacked merit.

> [A] defendant who seeks a mistrial on the ground that the jury has been improperly influenced by prejudicial publicity disseminated during trial must make some showing to the trial court at the time the motion is tendered that the jurors have in fact been exposed to such publicity. In the absence of a showing of juror exposure to prejudicial publicity during the course of trial, it will be presumed that the jurors followed the trial court's instructions to avoid or to ignore such publicity. *Waye v. Com.*, 219 Va. 683, 251 S.E.2d 202, *cert. denied*, 442 U.S. 924, 99 S.Ct. 2850, 61 L.Ed.2d 292 (1979).

*State v. Williams*, 172 W. Va. 295, 304-05, 305 S.E.2d 251, 261 (1983). "If it is determined that publicity disseminated by the media during trial raises serious questions of possible prejudice, the court may on its own motion or shall on motion of either party question each juror, out of the presence of the others, about his exposure to that material." *Id.* at 299, 305 S.E.2d at 255, Syl. Pt. 5.

Here, petitioner fails to show that the jury was improperly influenced by any radio broadcast during the trial and, therefore, he cannot show he is entitled to habeas relief. In denying petitioner's improper influence claim, the circuit court relied on *Williams* which provides: "A defendant who seeks a mistrial on the ground that the jury has been improperly influenced by prejudicial publicity disseminated during trial must make some showing to the trial court at the time the motion is tendered that the jurors have in fact been exposed to such publicity." *Id.* at Syl. Pt. 4. "If it is determined that publicity disseminated by the media during trial raises serious questions of possible prejudice, the court may on its own motion or shall on motion of either party question each juror, out of the presence of the others, about his exposure to that material." *Id.* at Syl. Pt. 5.

When petitioner's counsel moved to sequester the jury based on the radio report, the court found that the radio station's report, that petitioner admitted to strangling the victim, was correct. The State said it would not object if petitioner wished to "inquire of the jury." Petitioner did not respond, and the court noted the petitioner had "until the end of the day to make a decision on that." However, petitioner did not raise the issue again and put forth no evidence that any of jurors heard the radio report or that any prejudicial information was shared among them.

7

Where a defendant in a criminal trial declines the opportunity to poll the jurors as to their exposure to possibly prejudicial publicity disseminated during trial, such error is waived and may not be raised after the return of the verdict in a motion for a new trial, unless the defendant produces evidence that shows that some member of the jury was improperly influenced by such publicity.

*Id.* at Syl. Pt. 6. Here, the State suggested that the jury be polled about any exposure to the radio report, but petitioner chose not to do so. Nor did petitioner ask that the jury be polled after it rendered it verdict. On this record, we find that the circuit court did not err in denying habeas relief.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 23, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William L. Wooton
Justice Alan D. Moats sitting by temporary assignment

8